## SWIFT COMPANY *v*. UNITED STATES.

1. Under the act of July 14, 1870, c. 255, the proprietor of friction-matches, who
furnished his own dies, was entitled to a commission of ten per cent, payable
in money upon the amount of adhesive stamps over $500 which he at any
one time purchased for his own use from the Bureau of Internal Revenue.
2. The provisions of the statute being clear to that effect, he is entitled to re-
cover pursuant thereto, although a different contemporaneous construction
of them was given by the bureau, it not appearing that he acquiesced
therein.

APPEAL from the Court of Claims.
The facts are stated in the opinion of the court.

*Mr. George H. Williams* for the appellant.
*The Solicitor-General* for the United States.

MR. JUSTICE MATTHEWS delivered the opinion of the
court.

The Swift and Courtney and Beecher Company filed its

petition Jan. 20, 1879, in the Court of Claims, for the recovery of certain commissions alleged to be due to it on purchases of proprietary stamps under the internal revenue laws.

It alleged that it was, during the period covered by the transactions set out, the proprietor, manufacturer, and vendor of friction-matches; that, as such, at the beginning of its business, it furnished to the Commissioner of Internal Revenue its own die for stamps, to be used especially for its own proprietary articles; that, during said period, from time to time, and continuously on different days of each and every month, it sent to him sums of money from $1,000 to $10,000 as suited its convenience, and that he transmitted to it stamps, as it needed and ordered; so that in the account between it and him as to its stamps the creditor side showed moneys received by him in certain sums and at certain dates, but showed the receipt of no sum less than $1,000, and the debtor side of said account showed that stamps were sent by him to it in different sums and at different dates, but never in amounts less than $1,000.

It is further averred that upon the whole amount of stamps purchased, during the period referred to, the company was entitled to a commission of ten per cent in money, amounting to $389,720.40, which he has refused to allow; and has allowed in lieu thereof $354,291.27 in stamps at their face value; insisting such to be the long-established practice of the office, to which he must adhere, till changed by legislation or judicial decision. The company, in the petition, in reference to this practice, avers " that the allowances made to it from time to time between May 6, 1870, and Dec. 24, 1878, have been in accordance with the uniform practice of said internal revenue office from its organization, but petitioner avers that at different times prior to 1866 protests were made to the Commissioner of Internal Revenue by and on behalf of the manufacturers of friction-matches against such a construction of the statute by him, by which only ten per cent commissions in stamps at their face value were allowed by him upon the amount of money paid by the purchasers, instead of ten per cent upon the whole amount of stamps purchased, and that such facts are and have always been known to petitioner."

It is also averred that the company gave the required security for a credit of sixty days upon its purchase of stamps, as provided for in the act of June 30, 1864, c. 173 (13 Stat. 218, 295), which enacts, "That the Commissioner of Internal Revenue may from time to time furnish, supply, and deliver to any manufacturer of friction or other matches, cigar lights, or wax tapers, a suitable quantity of adhesive or other stamps, such as may be prescribed for use in such cases, without pre-payment therefor, on a credit not exceeding sixty days, requiring in advance such security as may be judged necessary to secure payment therefor, to the Treasurer of the United States within the time prescribed for such payment."

The defendant filed a general demurrer, which was sustained, and judgment rendered dismissing the petition. To review this judgment the present appeal is prosecuted by the company.

Section 102 of the act of July 1, 1862, c. 119 (12 Stat. 477), authorized the Commissioner of Internal Revenue to sell to and supply collectors, deputy collectors, postmasters, stationers, or any other persons, at his discretion, with adhesive stamps, upon the payment at the time of delivery of the amount of duties said stamps represent, and thereupon to allow and deduct from the aggregate amount of such stamps the sum of not exceeding five per cent as commission, with the proviso, "that any proprietor or proprietors of articles named in schedule C, who shall furnish his or their own die or design for stamps, to be used especially for his or their own proprietary articles, shall be allowed the following discount, namely: on amounts purchased at one time of not less than fifty nor more than five hundred dollars, five per centum; on amounts over five hundred dollars, ten per centum."

By the act of March 3, 1863, c. 74 (12 Stat. 714), the word "commission" was substituted for "discount" in this proviso.

This section as thus amended was re-enacted as sect. 161 of the act of June 30, 1864, c. 173 (13 Stat. 294), and schedule C enlarged so as to include friction-matches. p. 302.

Section 4 of the act of July 14, 1870, c. 255 (16 Stat. 257), continued in force the same provision, directing that proprietors of articles named in schedule C, who shall furnish their own dies, shall be allowed commissions, on amounts over five

hundred dollars, "ten per centum on the whole amount purchased."

It will be perceived, on examining this legislation, that while, in respect to adhesive stamps sold, other than those to proprietors of articles named in schedule C from their own dies for their own use, the rate of the commission to be allowed to the purchaser shall not exceed five per cent, but within that limit, is subject to the discretion of the Commissioner of Internal Revenue; while, in respect to those of the latter class, including stamps on friction-matches, the rate is fixed by the statute itself, and in the form as expressed in the act of 1870, where the amounts of purchases are over $500, the commissions are established at ten per cent on the whole amount purchased. So that, while in the sale of adhesive stamps of the former description, in the exercise of his discretion as to the rate, he might lawfully provide that the commissions should be paid only in stamps at their face value, yet, in the sale of stamps to proprietors of friction-matches, he was not authorized to diminish the commission by any such regulation, but was required to allow and pay in money ten per cent calculated on the amount of stamps purchased on all sales exceeding $500 in amount.

In the present case the commissions were allowed to the company not on the whole amount of stamps furnished to it, nor in money, but in stamps at their face value, calculated on the amount of money paid by it. This suit was brought to recover the difference between the amounts, resulting from these two modes of calculating and allowing commissions.

There is no serious question raised as to the proper construction of the internal revenue acts upon the point, it being virtually admitted that the contention on the part of the appellant upon the provisions of the statutes is correct.

It is met, however, in the opinion of the Court of Claims, and in argument on behalf of the government here, that the contrary construction, to pay these commissions in stamps at their face value, has been acted upon by the Commissioner of Internal Revenue from the beginning; has been acquiesced in by purchasers and dealers; and has never been changed by Congress; and as an official practice has thus acquired the

force of law; or if not, then, at least, it was a course of dealing, well known to the appellant, and acquiesced in, by which it accepted stamps at their face value in payment of its commissions, which it is not at liberty now to open, question, and reverse.

The right construction of the internal revenue acts, upon the point of the allowance of commissions to dealers in proprietary articles, purchasing stamps made from their own dies, and for their own use, is too clear to bring the case within the first alternative. The rule which gives determining weight to contemporaneous construction, put upon a statute, by those charged with its execution, applies only in cases of ambiguity and doubt. *Edwards's Lessee* v. *Darby*, 12 Wheat. 206; *Smythe* v. *Fiske*, 23 Wall. 374; *United States* v. *Moore*, 95 U. S. 760; *United States* v. *Pugh*, 99 id. 265.

We are of opinion that the averments of the petition, admitted by the demurrer, do not bring it within the operation of the principle invoked in the second alternative. The case made by the petition is not that of successive and independent purchases of stamps, settled for, at the time, when the commissions given by the law were paid by the commissioner, the purchaser voluntarily accepting payment, not in money, but in other stamps; and new dealings, of the same character, but separate as to each instance, had, afterwards, upon the same footing and by mutual understanding. On the contrary, the business was conducted upon the footing of a running account. Money was paid on account of stamps furnished or to be furnished, in sums, differing in amount, but not less in any case than $500; and stamps were supplied in varying quantities, as ordered, without reference to corresponding and equivalent payments of cash; a bond with satisfactory security, in pursuance of law, having been given and accepted, to secure the government against loss, in consequence of purchases on credit. The dealing is, undoubtedly, evidence that the appellant was willing to purchase stamps, to be paid for by a credit on account, in lieu of cash for commissions; but it does not prove that he was willing to waive his right to a commission upon the stamps so purchased. And it would be incumbent on the government, in order to deprive him of his statutory right, not

only to show facts, from which an agreement to do so might be inferred, but an actual settlement based upon such an understanding. The allegations in the petition, in our opinion, do not constitute such a bar to the recovery sought, and the demurrer interposed should not, therefore, have been sustained.

For this error, the judgment of the Court of Claims will be reversed, and the cause remanded for further proceedings in accordance with law; and it is

*So ordered.*